**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) Chapter 7 |
| | ) |
| RICHARD REDDEN and GRACIELA REDDEN, | ) Case No. 04-12335(PJW) |
|           Debtors. | ) |
| _____ | ) |
| | ) |
| JOSEPH E. ECKBOLD, JR. and JACLYN M. D'ELIA, | ) |
| | ) |
|           Plaintiffs, | ) |
| | ) |
|           v. | ) Adv. Proc. No. 12-51012(PJW) |
| | ) |
| SUSAN MILLER, PERSONAL REPRESENTATIVE OF THE ESTATE OF RONALD A. MILLER, SUPER LAWNS, INC.; and SUPER LAWNS OF FAIRFAX, INC., | ) |
| | ) |
|           Defendants. | ) |

**MEMORANDUM OPINION**

Stephen W. Spence
Lisa C. McLaughlin
Aaron C. Baker
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806

Counsel to Susan Miller, as
Personal Representative of the
Estate of Ronald A. Miller,
Super Lawns, Inc., and Super
Lawns of Fairfax, Inc.

Ryan M. Ernst
O'Kelly Ernst & Bielli, LLC
901 N. Market Street
Suite 1000
Wilmington, DE 19801

Counsel to Plaintiffs,
Joseph E. Eckbold, Jr. and
Jaclyn M. D'Elia

Dated: September 26, 2013

**WALSH, J.**

This opinion is with regard to the motion to dismiss (the "Motion")(Doc. # 18) filed by Defendants Susan Miller (as personal representative the estate of Ronald A. Miller), Super Lawns, Inc., and Super Lawns of Fairfax, Inc., pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c) for failure to state a claim upon which relief can be granted.  The Motion seeks to dismiss the adversary proceeding ("Complaint") filed by Joseph E. Eckbold, Jr. and Jaclyn M. D'Elia ("Plaintiffs")to avoid and recover preferential transfers.  For the reasons detailed below, I will grant the Motion and dismiss the Complaint.

## Background

The Circuit Court for Montgomery County, Maryland entered four separate judgments pursuant to one civil action against Richard and Graciela Redden ("Debtors") on May 21, 2004. These judgments were in favor of four plaintiffs: Super Industries, Inc., Susan Miller (as personal representative the estate of Ronald A. Miller), Super Lawns, Inc., and Super Lawns of Fairfax, Inc.  All four judgments were transferred on July 15, 2005 to the Superior Court of Delaware in New Castle County, upon which time they became judgment liens against the primary residence of Debtors.

On August 12, 2004, Debtors filed a joint Chapter 7 bankruptcy petition in this Court.  An order of discharge and closure was entered by the Court on September 2, 2005.  On August

8, 2006, Debtors filed a motion to reopen their case simultaneously with a complaint to avoid and recover a preferential transfer. Debtors complaint referenced only the judgment in favor of Super Industries, Inc.  On October 2, 2006 the Court entered an order granting Debtors motion to avoid the judgment lien pursuant to a stipulated consent order.  The bankruptcy case was closed for the second time on October 29, 2006.

Subsequently, on November 3, 2009, Debtors conveyed their primary residence to Plaintiffs.  The three remaining creditors with un-avoided judgment liens have recently notified Plaintiffs of an intent to foreclose on the property.  In response, Plaintiffs filed a motion to reopen Debtors Chapter 7 case, which was granted on November 14, 2012.  The Complaint filed by Plaintiffs on November 26, 2012 seeks an order of avoidance of the remaining three judgment liens as preferential transfers.

## Jurisdiction

This Court has jurisdiction over the present adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

## Standard of Review

Pursuant to FRCP 12(c), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, the standard of review is evaluated by the same standard as a FRCP 12(b)(6) motion to dismiss. <u>Caprio v. Healthcare Revenue Recovery</u>

4

Grp., LLC, 709 F.3d 142, 146 (3d Cir. 2013).  As such, the pleadings and inferences to be drawn are viewed in the light most favorable to Plaintiffs.  See Leamer v. Fauver, 288 F.3d 532, 535 (3d Cir. 2002).  The moving party is entitled to judgment as a matter of law if they can establish that there is no material issue of fact to resolve. Id.  To survive a motion to dismiss, the pleadings must contain factual allegations which are enough "to raise the right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012).

**Discussion**

I.   Standing for a Non-Trustee to Bring an Avoidance Action Under
     11 U.S.C. § 547(b)

Standing to bring an avoidance action is expressly given under § 547(b) to trustees who "may avoid any transfer of an interest of the debtor in property[.]"  11 U.S.C § 547(b).  That congressional grant of standing has a narrow and limited exception contained in § 522(h).  Section 522(h) enables the debtor, in a select situation, to bring an adversary proceeding to avoid a transfer of property.  See 11 U.S.C § 522(h). Generally, the debtor can effectuate this right when the transfer is avoidable by the trustee, but the trustee does not attempt to avoid the transfer, to the extent that the debtor could have exempted the property. Id.

Herein, the dispute arises from whether an express grant of standing to a trustee under § 547 (and the debtor under § 522(h)) disallows standing by other potentially interested parties. In Hartford Underwriters Ins. Co. v. Union Planters Bank, the Supreme Court of the United States analyzed a similar question under a different, but analogous Bankruptcy Code section. Compare 11 U.S.C § 547(b)("the trustee may avoid"), with 11 U.S.C § 506(c)("the trustee may recover").

The Court in Hartford held that the phrase "the trustee may" contained in § 506(c)engendered exclusivity even though the statute did not expressly disallow others to use and seek recovery under § 506(c). Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 7 (2000). The Court had "little difficulty" finding that the plain and clear articulation of "the trustee may" language in § 506(c) provided a proper inference "that the trustee is the only party empowered to invoke the provision." Id.

This Court is unconvinced that the reading of, and meaning derived from, the language in § 547 should differ from the interpretation and analysis of the reading of parallel language from § 506(c) discussed in Hartford. The rights given explicitly to the trustee in § 547(b) preclude Plaintiffs, as non-trustees, from exercising avoidance power. See Shifano v. Lendmark Fin. Serv., Inc.(In re Shifano), 2013 WL 85203, at *3 (Bankr. D.Del. January 8, 2013)(using Hartford to find that a Chapter 7 trustee

may avoid under § 547(b) and the debtor may not); In re McGuirk, 414 B.R. 878, 879 (Bankr. N.D. Ga 2009); In re Cooper, 405 B.R. 801, 807-08 (Bankr. N.D. Tx 2009).

Plaintiffs here are not trustees nor are they debtors. Their status as third-party successors-in-interest to Debtors' post-bankruptcy property does not provide them with standing under § 522(h) and Plaintiffs do not have independent standing to avoid preferential transfers under § 547(b).[1]

II. Standing for a Third-Party Successor-in-Interest of Debtors Post-Bankruptcy Property Under a Theory of Derivative Standing

While the Court in Hartford rejected the independent right of a non-trustee to have standing under § 506(c), its dicta in footnote 5 left open the possibility of using derivative standing in the alternative. See Hartford, 530 U.S. at 14 n.5 ("We do not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c)."). Footnote 5 describes the practice of creditors and/or creditors' committees having a derivative right to bring an avoidance action even when the underlying Code section only mentions the trustee. Id. The question then becomes, when is it proper to authorize a non-trustee to sue on behalf of the estate.

---

[1] In their opposition to the motion to dismiss, Plaintiffs admit that "[t]o date, counsel for Plaintiffs have been unable to locate the Debtors." (Doc. # 20, p. 11 n.3)

Derivative standing post-Hartford was extensively analyzed by the Third Circuit, in which the court ultimately found that bankruptcy courts have the power to authorize derivative standing for creditors' committees in Chapter 11 cases.  The Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (Cybergenics II), 330 F.3d 548, 580 (3d Cir. 2003)(en banc).  Even though the Third Circuit did not express a specific procedure for obtaining derivative standing, courts have since found that the reasoning in Cybergenics II is in accord with the Second and Seventh Circuits approach, generally requiring a showing of "(1) a colorable claim; (2) that the trustee unjustifiably refused to pursue the claim; and (3) permission of the bankruptcy court to initiate the action."  In re Yes! Entm't Corp., 316 B.R. 141, 145 (D.Del.2004); In re Summit Metals, Inc., 477 B.R. 484, 502 n. 12 (Bankr.D.Del. 2012); In re Centaur, LLC, No. 10-10799(KJC), 2010 WL 4624910, at *4 (Bankr.D.Del. Nov. 5, 2010).  See generally Commodore Int'l v. Gould (In re Commodore Int'l Ltd.), 262 F.3d 96, 100 (2d Cir.2001); Fogel v. Zell, 221 F.3d 955, 966 (7th Cir.2000).

In discussing derivative standing, the Cybergenics II court distinguished itself from Hartford by differentiating between the two contexts from which both cases individually arose. Cybergenics II, 330 F.3d at 558.  The Third Circuit focused on the distinction between a suit to benefit the estate and a suit

initiated for the moving party's "own direct benefit." Id.  The
latter was the case in Hartford. Id.; Hartford at 4.

Following in the footsteps of Cybergenics II, Plaintiffs
ask that they be granted derivative standing to bring their
avoidance action.  The issue at bar, however, does not bear any
resemblance to the issues discussed by the Third Circuit.

Here, Plaintiffs have conceded that this lawsuit will not
involve the original bankruptcy estate, as the estate "remains
unaffected by this proceeding."  (Pl.'s Br. at 10.)  Hence,
Plaintiffs have no conceivable argument that even if they were
granted standing, that this avoidance is in the best interest of
the estate.  The request to avoid preferential transfers is not
occurring during the pendency of a bankruptcy case, but rather six
years after the estate has been administered.  Nor was any evidence
proffered that the trustee in the bankruptcy proceeding improperly
refused to avoid the three remaining liens.  Without an argument
that granting standing would benefit the bankruptcy estate,
derivative standing is necessarily improper. See McGuirk, 414 B.R.
at 880 ("Derivative standing is granted to benefit the estate as a
whole, not merely to benefit the creditor bringing the claim.").

In another alternative, Plaintiffs request this court use
its powers of equity under § 105(a) to grant standing should none
exist otherwise.  The equitable powers of the bankruptcy court were
utilized in Cybergenics II in order to confer derivative standing

to the creditors' committee. <u>Cybergenics II</u>, 330 F.3d at 568. However, the court did so with express purpose of maximizing the value of the bankruptcy estate to "effect the result the Code was designed to obtain." <u>Id</u>. Here, Plaintiffs seek to circumvent a standing rule for their individual gain. Again, the lack of a meaningful relationship between the current adversary proceeding and the bankruptcy estate precludes the court from utilizing its powers in equity.

Lastly, Plaintiffs contend that while creditors' committees might be the most prevalent use of derivative standing, that they are not the only ones granted such status. Grants of derivative standing to non-creditors' committee (generally individual creditors) stem from the inequitable result that potentially occurs when a trustee refuses to pursue a credible claim on behalf of the estate. <u>See</u> <u>generally</u> <u>PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.)</u>, 540 F.3d 892, 898 & n. 7 (8th Cir.2008) ("derivative standing is available to a creditor to pursue avoidance actions when it shows that a Chapter 7 trustee . . . is 'unable or unwilling' to do so"); <u>Fogel</u>, 221 F.3d at 965 ("The right to bring a derivative claim, of which the most common type is the shareholder derivative suit, depends on showing that the primary claimant has unjustifiably failed to pursue the claim."). Again, the reasoning underpinning those cases is clearly dissimilar to the case at bar.

No support was given of an instance upon which the ability to grant derivative standing extends as far as Plaintiffs have asked this court to go--namely to a non-creditor, after the pendency of the bankruptcy case. This is especially true since a lack of unjustifiable failure to prosecute an avoidance claim was not mentioned in Plaintiffs pleadings. See In re Racing, 540 F.3d at 899 (finding that "critical inquiry" in determining if a creditor can obtain derivative standing is whether the trustee abused its discretion by "unjustifiably refusing to pursue the creditor's proposed claims.").

The majority of the cases cited by Plaintiffs support a contention that there are instances in which an individual creditor may be given derivative standing to an avoidance action in a Chapter 7 post-Cybergenics II. However, Plaintiffs are not creditors of Debtors' bankruptcy estate, and were not a party to the bankruptcy proceeding.

III. The Statute of Limitations under 11 U.S.C. § 546 and The Relation-Back Doctrine

Even if, *arguendo*, the Court found that Plaintiffs did have standing to bring their cause of action, they failed to file their Complaint in a timely manner. The statute of limitations under § 546 (a) is clear, stating as follows:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of–

    (1) the later of—

        (A) 2 years after the entry of the order for relief; or

        (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

    (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

    The Court has been asked to excuse application of the statute of limitations and relate the Complaint filed by Plaintiffs back to the complaint filed by Debtors when they re-opened their bankruptcy case in 2006.

    The Court is perplexed by the notion that a new and separate complaint could relate back to a previously filed, and subsequently closed, cause of action. Particularly since it was filed by a wholly different party six years prior. Plaintiffs support their argument through a series of cases which rely upon FRCP 15 (c). But, FRCP 15(c) as a relation-back doctrine, clearly refers to the "relation back of **amendments**" to the "date of the original pleading." Fed. R. Civ. P. 15 (c)(1)(emphasis added). It is a doctrine for determining whether an amendment can be deemed filed as of the date of the original pleading, instead of the date of the amendment. See id.

Here, the Complaint filed by Plaintiffs is not an amendment to an earlier complaint. This new cause of action initiated by Plaintiffs cannot realistically be construed as an amendment to Debtors' 2006 Complaint.

To construe a new cause of action filed by a completely different plaintiff as an amendment to a complaint they did not participate in is beyond the scope of FRCP 15(c). See Morgan Distributing Co., v. Unidynamic Corp., 868 F.2d 992, 994 (8th Cir. 1989)(citing Schiavone v. Fortune, 477 U.S. 21, 29, (1986))("Rule 15(c) concerns amendments to pleadings. Its plain language makes clear that it applies not to the filing of a new complaint, but to the filing of an amendment [.]").

There is no "amendment" that this Court can relate-back to an earlier pleading, rendering the relation-back doctrine contained in FRCP 15(c) inapplicable to this proceeding. See Neverson v. Bissonnette, 261 F.3D 120, 126 (1st Cir. 2000) ("Rule 15(c) simply does not apply where, as here, the party bringing suit did not seek to 'amend' or 'supplement' his original pleading, but, rather, opted to file an entirely new petition at a subsequent date. In short, there was nothing to which Petition No. 2 could relate back.").

IV.  The Equitable Tolling of the Statute of Limitations

Various circuit courts have found that the statute of limitations period contained in § 546(a) may be subject to the

doctrine of equitable tolling.  Fogel v. Shabat (In re Draiman), 714 F.3d 462, 466 (7th Cir. Ill. 2013); Jackson v. Astrue, 506 F.3d 1349, 1354-55 (11th Cir. 2007); Jobin v. Boryla (In re M & L Business Machine Co.), 75 F.3d 586, 591 (10th Cir. 1996); Ernst & Young v. Matsumoto (In re United Ins. Mgmt, Inc.), 14 F.3d 1380, 1384-85 (9th Cir. 1994).  Generally, the Third Circuit has found that equitable tolling can be used by a party when they have been "prevented from filing in a timely manner due to sufficiently inequitable circumstances."  Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005); Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir.1999).  This inequity generally occurs in three instances: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."  Hedges, 404 F.3d at 751 (citing Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997)).  These three instances did not occur as to Plaintiffs.

    All the Court was given is what Plaintiffs loosely describe as an "apparent mistake" as the reason upon which only one lien was avoided instead of all four. (Pl.'s Compl. at 2, ¶6.) However, they give no further details or information concerning why

this is the first instance in which the "apparent mistake" is being challenged.

Lastly, equitable tolling is a remedy that is lost upon a lack of showing of diligence to preserve a claim. <u>Baldwin County Welcome Ctr. v. Brown</u>, 466 U.S. 147, 151 (1984); <u>In re United Ins. Mgmt, Inc.</u>, 14 F.3d at 1386.  Plaintiffs received the deed to the property at issue in 2009.  (Pl.'s Compl. at 3, ¶ 9.) They claim that at that time "Mr. Redden represented and warranted that there were no unsatisfied judgment liens on the property." <u>Id</u>.  However, a simple title search at the time would have either confirmed or contradicted that statement.  This three year delay is not explained by Plaintiffs in their pleadings, and thus cannot support a claim of equable tolling in their favor.

## Conclusion

For the reasons described above, I will grant the Motion and dismiss the Complaint for failure to plead sufficient factual allegations showing an entitlement to relief.